UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JASON B.[1],                                                                Case No. 3:19-cv-00956-JR

               Plaintiff,                                          OPINON AND ORDER

   v.

COMMISSIONER,
Social Security Administration,

                     Defendant.

RUSSO, Magistrate Judge:

Jason B. ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") under XVI of the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is REVERSED and REMANDED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the initial of the last name.

Page 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff was born in November 1977. Tr. 33, 59, 74. Plaintiff applied for SSI on April 11, 2016, alleging disability with an onset date of September 7, 2007. Tr. 15. Plaintiff alleged disability based on back injuries with multiple surgeries; posttraumatic stress disorder ("PTSD"); bipolar disorder; three bulging discs in the neck; inserted back hardware; anxiety; sciatica; asthma; arthritis in the knees, shoulders, and back; tendinitis; and attention deficit hyperactivity disorder ("ADHD"). Tr. 60, 77. Plaintiff earned his GED in 1996. Tr. 36, 193. He has no past relevant work, but previously worked as a carpenter, framer, and crew leader. Tr. 21, 71-72.

His application was denied initially and upon reconsideration. Tr. 74-75. An Administrative Law Judge ("ALJ") held a hearing on January 31, 2018, and on April 4, 2018, issued a decision finding plaintiff not disabled. Tr. 13-23, 30-58. On April 15, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. This appeal followed.

## THE ALJ'S FINDINGS

The ALJ performed the five step sequential analysis for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R § 416.920. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his application date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "spine disorder; right knee disorder; [and] obesity." Id. At step three, the ALJ determined plaintiff's impairments, neither individually nor in combination, met or equaled the requirements of a listed impairment. Id.

Because the ALJ did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [H]e can stand or walk a total of two hours in an eight-hour workday. He needs to adjust every two hours from sitting to standing, for a five-minute period, without leaving the workstation. The claimant is limited to occasional pushing and pulling with both lower extremities (including operation of foot controls). He should never crawl or climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and climb ramps or stairs. Additionally, claimant can occasionally reach overhead, but frequently reach in all other directions.

Tr. 17.

At step four, the ALJ determined plaintiff had no past relevant work. Tr.21. Based on the RFC and the vocational expert ("VE") testimony, the ALJ found at step 5 that a significant number of jobs existed in the national and local economy such that plaintiff could sustain employment despite his impairments. Tr. 21-22. Specifically, the ALJ found plaintiff could perform the jobs of "price marker," "storage facility rental clerk," and "small products assembler." Tr. 22. Accordingly, the ALJ determined plaintiff was not disabled under the Act. Tr. 22-23.

## STANDARD OF REVIEW

A district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citation omitted). In reviewing the Commissioner's alleged errors, a court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). When the evidence before the ALJ is subject to more than one rational interpretation, a court must defer to the ALJ's conclusion. Batson, 359 F.3d at 1198 (internal citation omitted). The reviewing court, however, cannot affirm the Commissioner's decision on grounds the agency did not invoke in making its decision. Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. Id. at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting the medical opinion of treating physician Todd Gillingham, M.D.

## I.   Applicable Legal Standards

Plaintiff assigns error to the ALJ's weighing of the medical opinion evidence. The ALJ is responsible for resolving conflicts in the medical record. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Turner v. Comm'r, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." Id. "[An] ALJ can satisfy the substantial evidence requirement by setting out a detailed

Page 4 – OPINION AND ORDER

and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citation and internal quotation marks omitted). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." Id. (citation omitted).

In his Opening Brief, plaintiff argued the operative legal standard in this matter is either clear-and-convincing or specific-and-legitimate. Pl.'s Op. Br. 8, 10 (doc. 14). The Commissioner responded that the operative standard is specific-and-legitimate because Dr. Gillingham's opinion was contradicted by the opinions of the Disability Determination Services ("DDS") consultants and the consultative examining physician ("CE"), Tatsuro Ogisu, M.D. Def.'s Br. 4 n.2 (doc. 16). In reply, plaintiff asserts the operative legal standard is clear-and-convincing because the DDS consultants and the CE did not have the entire administrative record at their disposal when rendering their opinions. Pl.'s Reply Br. 3 (doc. 17). Plaintiff maintains that based on the factors for evaluating any medical opinion under 20 C.F.R. § 416.927(c), Dr. Gillingham's opinion could be rejected only if the ALJ offered clear and convincing reasons to do so. See Pl.'s Reply Br. 3 ("Significant medical records informed Dr. Gillingham's opinion that were not reviewed by either Dr. Ogisu or the state agency physicians. Therefore, the clear and convincing standard is the appropriate standard here.").

Plaintiff's position is unavailing. Although evaluation of the factors for weighing medical opinion evidence under 20 C.F.R. § 416.927(c) is a relevant inquiry in reviewing a decision, whether one medical opinion is contradicted by another is a separate issue. Plaintiff conflates the two by essentially asserting that because the factors favored according greater weight to the treating physician's opinion, a heightened legal standard should be applied in reviewing the

Page 5 – OPINION AND ORDER

rejection of such evidence. But that is not what the case law says. Rather, the clear-and-convincing standard applies to the reasons for an ALJ's rejection of uncontradicted medical opinion evidence, while the specific-and-legitimate standard applies to the reasons for an ALJ's rejection of contradicted medical opinion evidence. See supra. The factors listed in 20 C.F.R. § 416.927(c) are separately considered in determining whether the reasons for rejecting medical opinion evidence were legally sufficient, regardless of whether they were contradicted.

Dr. Gillingham's opinion was contradicted in part by the DDS consultants' opinions, as well as other relevant evidence. For example, plaintiff's "full and painless range of motion through the lumbar spine, with minimal tenderness" on examination in 2017 is consistent with the DDS consultants' opinions that plaintiff could occasionally stoop (bend at the waist). See Tr. 20, 70, 85, 478. Dr. Gillingham's opinion that plaintiff could never stoop is contradictory. Tr. 589. Further, the DDS consultants determined plaintiff had no manipulative limitations, consistent with the CE's opinion. See Tr. 70, 85, 441. Dr. Gillingham's opinion that plaintiff had manipulative limitations is contradictory. Tr. 589.

Because Dr. Gillingham's medical opinion was contradicted by the opinions of the state agency consultants and other evidence in the record—regardless of when the opinions were rendered—the specific-and-legitimate standard applies. Bayliss, 427 F.3d at 1216.

**II.    Medical Opinion Evidence**

**A.    Dr. Gillingham's Opinion**

In his January 2018 opinion, Dr. Gillingham indicated he had treated plaintiff since 2012. Tr. 588. He identified plaintiff's medical conditions as cervical radiculopathy and lumbar radiculopathy, and plaintiff's primary symptoms as "neck pain down arms & hand numbness &

weakness . . . [and] low back pain." Id. The doctor opined plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, and could stand or walk for two hours and sit for four hours in a normal eight-hour workday. Tr. 589. He also opined plaintiff would need to spend the remaining two hours of the workday "lying flat." Id. The doctor indicated plaintiff could never climb, stoop, kneel, crouch, crawl, or perform overhead reaching. Id. Dr. Gillingham further opined plaintiff would be impaired by lack of concentration and attention to such an extent he could not perform simple work tasks approximately 50% of the workweek. Tr. 590. He expected plaintiff would miss 16 work hours per month performing even simple, routine work. Id.

The ALJ accorded partial weight to Dr. Gillingham's opinion. Tr. 20. The ALJ accorded great weight to the doctor's limitations as to overhead reaching, crawling, and climbing. Tr. 21. However, the ALJ accorded little weight to "Dr. Gillingham's remaining statements . . . as they are inconsistent with Dr. Ogisu's examination noting ability to toe and heel walk, tandem walk, intact strength through his extremities, and a negative Spurling's test."[2,3] Id. The ALJ additionally explained plaintiff's "full, painless range of motion through the shoulders, and negative Hoffman,

---

[2] Both parties defined the Spurling's, Babinski, and Clonus tests using various sources, including Wikipedia. Accordingly, for ease of reference, the medical definitions for those tests are sourced from Wikipedia. Only the Commissioner defined the Hoffmann test, so the Court will employ the definition offered. To wit: "This test is used to determine whether your fingers or thumbs flex involuntarily in response to certain triggers." See https://www.healthline.com/health/hoffman-sign (last visited 8/16/20).

[3] "Patients with a positive Spurling's sign can present with a variety of symptoms, including pain, numbness, and weakness . . . [and] may show signs suggesting a cervical radiculopathy." See https://en.wikipedia.org/wiki/Spurling%27s_test (last visited 8/16/20).

Page 7 – OPINION AND ORDER

Babinski,[4] and Clonus[5] tests d[id] not support Dr. Gillingham's remaining statements concerning the claimant's limitations." Id.

### B.   CE's Examination

Although plaintiff does not challenge the ALJ's weighing of the CE's medical opinion, it is helpful to summarize it in part. The CE performed a single physical examination and produced a report dated June 21, 2016. Tr. 437-41. The ALJ gave the opinion partial weight and discussed the functional limitations assessed by the doctor. Tr. 20.

The ALJ accorded great weight to the limitation of lifting 25 pounds occasionally and 10 pounds frequently based on consistency with the CE's objective findings, including plaintiff's ability to heel walk, tandem walk, and squat without support; negative straight leg raises; and painless range of motion through the shoulders. Tr. 20-21. Nevertheless, the ALJ ultimately determined it was "more appropriate" to further limit plaintiff to lifting and carrying 20 pounds occasionally. Id. The ALJ accorded little weight to the CE's limitations in sitting, standing, and walking four-to-six hours per workday because the limitations represented "a broad range of time," and were inconsistent with "recent examinations noting an antalgic gait" and "history of knee pain." Id.

### C.   Inconsistency in Treating Opinion and CE Exam Findings

The ALJ rejected Dr. Gillingham's stated limitations regarding lifting and carrying, standing or walking for two hours per workday, sitting for four hours, lying down, stooping,

---

[4] "The plantar reflex is a reflex elicited when the sole of the foot is stimulated with a blunt instrument." If the toes reflexively point upward, it is known as the Babinski sign. "The presence of the Babinski sign can identify disease of the spinal cord and brain in adults[.]" See https://en.wikipedia.org/wiki/Plantar_reflex (last visited 8/16/20).

[5] Clonus is a set of involuntary and rhythmic muscular contractions and relaxations. See https://en.wikipedia.org/wiki/Clonus (last visited 8/16/20).

kneeling, crouching, balancing, feeling, handling, fingering, attention and concentration, and absenteeism. Tr. 20-21 (ALJ according great weight only to Dr. Gillingham's limitations as to overhead reaching; crawling; and climbing ladders, ropes, or scaffolds). However, as plaintiff accurately notes, the ALJ adopted neither Dr. Gillingham's nor the CE's functional limitations regarding lifting, carrying, sitting, standing, or walking. Pl.'s Reply Br. 5. Rather, the ALJ discounted Dr. Gillingham's *opinion* in part based on certain *medical findings* in the CE's report, which is, generally, a valid reason. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (ALJ may reject treating physician's contradicted opinion in favor of a non-treating source whose opinion is based on independent medical findings) (citation omitted). Typically, that rationale is employed where the non-treating source's limitations are less restrictive than the treating source's.

Here, the CE's relevant examination findings included plaintiff's ability to toe walk, heel walk, tandem walk, and squat; intact strength throughout his extremities; negative straight leg raises; normal range of motion in the shoulders; and negative Spurling's test. Tr. 20-21. The ALJ further stated, "Dr. Gillingham's remaining statements" were also inconsistent with the CE's examination. Tr. 21. However, it is unclear which of Dr. Gillingham's statements were inconsistent with the CE's examination findings. For instance, although the ALJ accorded "great weight" to the CE's lifting and carrying limitations based on heel, toe, and tandem walking; squatting; and negative straight leg raises, he ultimately declined to adopt the CE's lifting and carrying limitations, deeming them too onerous in light of other medical findings. See Tr. 20. But Dr. Gillingham's lifting and carrying limitations were even less restrictive than the CE's. Tr. 589. As such, it appears the CE's toe, heel, and tandem walking findings were inconsistent with Dr. Gillingham's opinion that plaintiff was able to lift and carry *more* weight than the CE opined,

kneeling, crouching, balancing, feeling, handling, fingering, attention and concentration, and absenteeism. Tr. 20-21 (ALJ according great weight only to Dr. Gillingham's limitations as to overhead reaching; crawling; and climbing ladders, ropes, or scaffolds). However, as plaintiff accurately notes, the ALJ adopted neither Dr. Gillingham's nor the CE's functional limitations regarding lifting, carrying, sitting, standing, or walking. Pl.'s Reply Br. 5. Rather, the ALJ discounted Dr. Gillingham's *opinion* in part based on certain *medical findings* in the CE's report, which is, generally, a valid reason. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (ALJ may reject treating physician's contradicted opinion in favor of a non-treating source whose opinion is based on independent medical findings) (citation omitted). Typically, that rationale is employed where the non-treating source's limitations are less restrictive than the treating source's.

Here, the CE's relevant examination findings included plaintiff's ability to toe walk, heel walk, tandem walk, and squat; intact strength throughout his extremities; negative straight leg raises; normal range of motion in the shoulders; and negative Spurling's test. Tr. 20-21. The ALJ further stated, "Dr. Gillingham's remaining statements" were also inconsistent with the CE's examination. Tr. 21. However, it is unclear which of Dr. Gillingham's statements were inconsistent with the CE's examination findings. For instance, although the ALJ accorded "great weight" to the CE's lifting and carrying limitations based on heel, toe, and tandem walking; squatting; and negative straight leg raises, he ultimately declined to adopt the CE's lifting and carrying limitations, deeming them too onerous in light of other medical findings. See Tr. 20. But Dr. Gillingham's lifting and carrying limitations were even less restrictive than the CE's. Tr. 589. As such, it appears the CE's toe, heel, and tandem walking findings were inconsistent with Dr. Gillingham's opinion that plaintiff was able to lift and carry *more* weight than the CE opined,

which is the inverse of how the rationale is typically employed under Andrews. In short, the record suggests the ALJ determined Dr. Gillingham's lifting and carrying limitations were not restrictive enough based on the CE's findings.

It is also unclear how Dr. Gillingham's other "remaining statements," including limitations to standing and walking for two hours, sitting for four hours, lying flat for two hours, attention and concentration, and absenteeism were inconsistent with the CE's findings, as the ALJ did not credit any CE findings in those functional domains.[6] To the contrary, the RFC mirrored Dr. Gillingham's limitation to standing and walking for two hours per workday. Tr. 21. The CE's opinion as to sitting was rejected, and the CE did not provide any opinion regarding attention and concentration, or absenteeism. Tr. 20, 441. Presumably the CE did not ascribe any limitation regarding lying down because he opined plaintiff could stand, walk, or sit for the duration of an eight-hour workday, but again, the ALJ rejected this portion of the CE's opinion.

The ALJ additionally noted that the CE's examination demonstrated full, painless range of motion in the shoulders, intact strength through the extremities, and a negative Spurling's test. Although the ALJ did not specify how those findings contradicted the treating physician's opinion, presumably the findings were inconsistent with Dr. Gillingham's more restrictive limitations regarding handling, fingering, and feeling, consistent with the typical application of Andrews. Tr. 589. Although plaintiff does not appear to contest the ALJ's reasoning, because the contradiction

---

[6] The ALJ purported to discount Dr. Gillingham's opinion in part because the CE's examination demonstrated "intact strength through his extremities," but the ALJ did not include that finding in weighing the CE's opinion, or explain its significance. See Tr. 20. To the extent the finding addressed plaintiff's lower extremities, Dr. Gillingham's opinion that pushing and pulling was "limited in lower extremities" is not inconsistent with the RFC, which limits plaintiff to "occasional pushing and pulling with lower extremities." Tr. 17, 589.

Page 10 – OPINION AND ORDER

may reasonably be inferred, the ALJ did not err in rejecting the portion of Dr. Gillingham's opinion which addressed the upper extremity limitations of handling, fingering, and feeling.

While the CE's findings regarding plaintiff's shoulders and hands contradicted Dr. Gillingham's opinion, they do not appear to address the ALJ's rejection of the limitations regarding plaintiff's leg and lower back pain, or explain how the CE's assessment of neurogenic claudication[7] was inconsistent. As such, the ALJ's determination that the treating source's "remaining statements" were inconsistent with the CE's opinion was not sufficiently specific as it did not address Dr. Gillingham's limitations regarding the lower extremities (sitting, lying down), attention and concentration, or absenteeism. Cf. Garrison, 759 F.3d at 1012 (ALJ can satisfy substantial evidence requirement by setting out facts, identifying conflicts, stating an interpretation, and making findings). The ALJ's rationale therefore failed to meet the requisite legal standard.[8]

In addition to purported inconsistency with the CE exam, the ALJ rejected Dr. Gillingham's "remaining statements" based on negative Hoffmann, Babinski, and Clonus tests, which were administered by a physician assistant on September 5, 2017. Tr. 21, 467. The parties' explanations of the tests do not shed much light on the issue: it appears the tests are used to detect abnormal, involuntary muscle contractions (Hoffmann's and Clonus), or disease of the spinal cord and brain (Babinski). See supra. But it is not apparent why the absence of involuntary muscle

---

[7] "Neurogenic claudication . . . is the most common symptom of lumbar spinal stenosis and describes intermittent leg pain from impingement of the nerves emanating from the spinal cord." See https://en.wikipedia.org/wiki/Neurogenic_claudication (last visited 8/16/20).

[8] The parties disagree whether plaintiff adequately performed heel and toe walking at the CE examination, as both tests resulted in pain. Pl.'s Op. Br. 9; Def.'s Br. 6-7; Pl.'s Reply Br. 5. The issue is inapposite here because the ALJ invoked those findings in support of the CE's lifting and carrying limitations, which were more restrictive than Dr. Gillingham's, and which the ALJ ultimately rejected in formulating a still more restrictive RFC.

Page 11 – OPINION AND ORDER

contractions and disease of the spinal cord and brain contradicts Dr. Gillingham's assessed limitations due to leg and lower back pain. Tr. 589-90. As such, the ALJ's lack of specificity about which of Dr. Gillingham's "remaining statements" were undermined by the test results and why, was error. See, e.g., Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (ALJ must provide sufficient reasoning for the reviewing court to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence).

The Commissioner argues that other medical findings made by the CE contradicted the treating opinion. For example, the Commissioner notes plaintiff was able to get on and off the exam table without difficulty, did not have tenderness in his spine, and did not have problems with gait at the CE examination. Def.'s Br. 5-6. But the ALJ did not invoke those reasons in making the CE inconsistency finding, and therefore the Court may not rely on them in affirming the decision. See, e.g., Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted). The Commissioner further notes plaintiff demonstrated normal gait and station at several clinical visits, and had a number of normal musculoskeletal examinations. Def.'s Br. 5-6. But again, the ALJ did not invoke those reasons in according little weight to Dr. Gillingham's opinion and are therefore impermissible *post hoc* rationales. Burrell, 775 F.3d at 1141.

For these reasons, the ALJ failed to provide specific and legitimate reasons to reject relevant evidence provided in Dr. Gillingham's opinion regarding sitting, lying down, attention and concentration, and absenteeism based on the CE's examination or the negative test results of September 5, 2017. Because the sitting and lying down limitations likely preclude employment (rendering a worker unable to stand, walk, or sit for the duration of an eight-hour workday), and because the VE testified both being off-task for 20 percent of the workday and absenteeism of 16

hours per month independently preclude competitive employment, the errors were not harmless. Stout, 454 F.3d at 1055-56.

### D.     Consideration of Regulatory Factors in Weighing Treating Opinion

Plaintiff additionally argues that the ALJ erred by failing to apply the factors set forth in 20 C.F.R. § 416.927(c) in evaluating Dr. Gillingham's medical opinion. Pl.'s Op. Br. 8, 10. An ALJ's failure to consider the factors "constitutes reversible error." Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017). The factors include consideration of the length of the treatment relationship and frequency of medical examination, the nature and extent of the treatment relationship, the supportability of the opinion, consistency with the medical record, and the physician's medical specialization. 20 C.F.R. § 416.927(c)(1)-(6). The Commissioner argues the ALJ adequately addressed the factors because "the decision contained sufficient indications that she considered the regulatory factors[.]" Def.'s Br. at 8 (citing Kelly v. Berryhill, 732 Fed. App'x 558, 562 n.4 (9th Cir. 2018) (mem.)). In support, the Commissioner notes that the ALJ indicated Dr. Gillingham had treated plaintiff since 2012 and explained the supportability and consistency of the medical opinion based on the record as a whole.

However, in Kelly, the Ninth Circuit determined an ALJ erred because there was no indication that the factors were considered, "other than a cursory acknowledgment" that the physician had a treatment relationship with the claimant. Kelly, 732 Fed. App'x at 562 n.4. Here, the ALJ's recognition that Dr. Gillingham treated plaintiff since 2012—with nothing further—is not much better, as the statement satisfies only a portion of 20 C.F.R. § 416.927(c)(2)(i). See Tr. 20-21. Although the Commissioner argues the ALJ also contemplated (c)(3) and (c)(6), the ALJ did not explain why the relevant parts of the treating opinion were unsupported, or how they were

inconsistent with the record as a whole. Rather, for the reasons described above, the ALJ provided inadequate and incomplete reasons why the treating opinion was inconsistent with and unsupported by the CE's examination. The ALJ further provided inadequate reasons why other record evidence did not support relevant parts of the treating opinion. Accordingly, the ALJ failed to adequately consider the regulatory factors, which alone requires remand. Trevizo, 871 F.3d at 676.

### III. Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies with the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).

The Ninth Circuit's "credit-as-true" doctrine is "settled" and binding on this Court. Garrison, 759 F.3d at 999. In conducting the "credit-as-true" analysis, the court first determines whether the ALJ committed legal error; and if so, the court must review the record and decide whether it is "fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) (internal citation omitted). Second, the court considers whether further administrative proceedings would serve a "useful purpose." Id. at 407 (internal citation omitted). Third, if the court finds the record is fully developed and further administrative proceedings would not be useful, the court may credit the improperly discredited evidence as true and determine whether the ALJ would be required to

find the claimant disabled in light of this evidence. Id. (internal citation omitted). If so, the court may remand the case for an award of benefits, although the court ultimately retains "discretion in determining the appropriate remedy." Id. at 407-08 (internal citation omitted).

The first prong of the doctrine is met based on the ALJ's errors as described above. However, the record contains a number of inconsistencies and ambiguities in the medical evidence. As discussed above, the treating physician's opinion is contradicted by the DDS consultants, portions of the CE opinion and examination, and variable results on an assortment of musculoskeletal medical findings of record. Other factual matters also remain unresolved, including the significance of the reflex tests described in rejecting the treating opinion. As such, further proceedings are necessary. Accordingly, this case must be remanded for proper evaluation of Dr. Gillingham's opinion in light of the record as a whole, and if necessary, reformulation of plaintiff's RFC and additional VE testimony.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is REVERSED and this case REMANDED for further proceedings.

IT SO ORDERED.

DATED this 24th day of August, 2020.

    /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge